WILLIAM E. ADAMS #153330
DAWN NEWTON #209002
MICHAEL D. GOWE #226989
FITZGERALD ABBOTT & BEARDSLEY LLP
1221 Broadway, 21st Floor
Oakland, California  94612
Telephone: (510) 451-3300
Facsimile: (510) 451-1527
Email: wadams@fablaw.com

Attorneys for John T. Kendall, Chapter 7 Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| In re | Case No.: 3:07-cv-03713 MJJ |
| PLAN COMPLIANCE GROUP, LTD., | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF REFERENCE** |
| Debtor. | |
| JOHN T. KENDALL, Chapter 7 Trustee, | |
| Plaintiff, | |
| vs. | |
| HARTFORD FIRE INSURANCE COMPANY, a Connecticut Corporation, | |
| Defendant. | |

## I.    ISSUE TO BE DECIDED

Whether the Court should deny Plaintiff's motion for withdrawal of reference to the Bankruptcy Court under 28 U.S.C. § 157(d).

## II.    INTRODUCTION AND BACKGROUND

Plaintiff John T. Kendall, Chapter 7 Trustee hereby respectfully submits his opposition to the motion for withdrawal of reference by Defendant Hartford Fire Insurance Company.  As

---
1
---

11/21/07 (23678) #276173.4

1  shown below, Plaintiff's declaratory relief action--the subject of Defendant's motion--stands to

2  have a critical impact on the outcome of the bankruptcy proceedings.  As such, the Court should

3  deny Defendant's motion and refer the action to the Bankruptcy Court for resolution.

4      **A.  Factual Background.**

5          **1.  Employee Theft.**

6       The debtor in the underlying bankruptcy action, Plan Compliance Group ("PCG"), was

7  in the business as a third-party administrator for 403(b) accounts of school employees.  As the

8  third-party administrator, PCG's role was to collect monthly or bi-monthly payroll distributions

9  from thousands of employees, then to remit those distributions to either institutional investment

10  companies, who would, in turn, invest and manage the school employee's funds, or to various

11  insurance companies to pay the employee's insurance premiums.

12       Francis William Reimers founded PCG in or about 1996.  Reimers further held himself

13  out as a representative of a business called Advisory Services Group ("ASG"), which purported

14  provided financial and investment management services to individual investors.  There is no

15  evidence, however, that ASG in fact existed.  Nonetheless, as PCG's business prospered, it

16  appears that Mr. Reimers diverted PCG funds to pay monthly dividends to ASG investors as

17  well as to pay personal expenses.  Reimers concealed these activities from the officers,

18  employees, and customers of PCG.

19          **2.  PCG's Claims Under the Bond.**

20       In 1999, PCG obtained a CrimeSHIELD Policy For Mercantile Entities[1] (the "Policy")

21  from Defendant to insure against employee fraud and dishonesty.  The Policy provides that

22  Defendant will indemnify PCG for, among other things, employee theft for an amount up to $2

23  million.  The Policy remained in effect at all relevant times.

24       On November 17, 2005, a PCG investor raised questions about PCG failing to "to

25  properly account for, administer and return approximately $2.3 million."  This complaint

---

[1] Policy Number 57BDDAH0053

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF
REFERENCE

11/21/07 (23678) #276173.4

1    quickly unraveled Reimers' fraudulent conduct which amounted to many millions of dollars.

2    Reimers subsequently attempted to take his own life and PCG sought bankruptcy court

3    protection on December 29, 2005.   Reimers eventually confessed to his misconduct in a federal

4    criminal proceeding and has been sentenced to nine years in prison.

5           On April 10, 2006, PCG filed a Proof of Loss with the Hartford for amounts in excess of

6    $1 million.  The Proof of Loss indicates that the loss was first discovered on December 16, 2005

7    and had occurred over the time period between June 15, 2005 and December 15, 2005.  PCG

8    filed an Amended Proof of Loss on August 29, 2006, indicating that, based on additional

9    information regarding the extent of Reimers' criminal conduct, the estimated loss stands in

10   excess of $3.8 million.  At present, there has been no further progress as to PCG's claim under

11   the Policy.

12          **B.  Procedural Background.**

13          Defendant has investigated PCG's claim, but has never offered to pay any portion of the

14   loss or even take a coverage position on its payment obligation.  After unsuccessfully attempting

15   to elicit a position from Defendant for over a year, PCG, through Plaintiff, filed a declaratory

16   relief action in the Bankruptcy Court on May 18, 2007 for a determination as to whether

17   Defendant is obligated to pay PCG under the Policy for the losses suffered by it due to Reimers'

18   defalcations.

19          On or about June 29, 2007, Defendant filed a motion for withdrawal of reference in the

20   Bankruptcy Court with respect to Plaintiff's declaratory relief action.  On or about July 19, 2007,

21   the Bankruptcy Court transferred the declaratory relief action to this Court for purposes of

22   adjudicating Defendant's motion.  In correspondence dated August 14, 2007, the Clerk for the

23   District Court directed that notice Defendant's motion be made pursuant to Civil Local Rule 7-

24   2(a).  No action was taken by Defendant in response to the Clerk's August 14th correspondence.

25          On October 18, 2007, Plaintiff, through its counsel, sent a letter to the Court (and copied

26   defense counsel) requesting that it order Defendant to file and serve its notice and motion for

27

28

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF
REFERENCE

11/21/07 (23678) #276173.4

1  withdrawal pursuant to the Civil Local Rule 7-2(a).  On or about October 24, 2007, within days

2  of its receipt of Plaintiff's letter, Defendant filed its notice and motion in this Court.  In its

3  motion, Defendant attributes its delay in filing the notice and motion to a delay in the

4  "appropriate attorney's" receipt of the Clerk's August 14th correspondence; Defendant, however,

5  makes no reference in its motion to its obligations under Civil Local Rule 7-2(a), independent

6  from any instructions from the Clerk.

7  **III.    ARGUMENT**

8      **A.  Governing Standard Regarding Discretionary Withdrawal.**

9          Although district courts have original jurisdiction over all civil proceedings arising under

10  Title 11 of the United States Code, district courts may refer all proceedings arising in or relating

11  to bankruptcy matters to the bankruptcy judges for the district.  28 U.S.C. §§ 157(a), 1334(b).

12  District courts may further withdraw reference to the bankruptcy court "for cause shown."  28

13  U.S.C. § 157(d).  Whether to withdraw a case pursuant to section 157, however, is wholly

14  within the district court's discretion.  Id.

15          Because section 157 fails to define the term "cause," district courts must consider the

16  following factors in determining whether cause exists:

17      • The efficient use of judicial resources;

18      • Delay and costs to the parties;

19      • Uniformity of bankruptcy administration; and

20      • The prevention of forum shopping.

21  Security Farms v. Int'l Bhd. Of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997).  The

22  Central District of this Circuit has considered additional factors:

23      • Whether the claim is core or non-core;

24      • Whether the claim is legal or equitable;

25      • Whether the claim is triable by a jury; and

26      • Conservation of estate and non-debtor resources.

27  ───────────── 4 ─────────────

28  PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF
REFERENCE

1    <u>Daewoo Motors America, Inc. v. Gulf Ins. Co.</u>, 302 B.R. 308, 310 (C.D. Cal. 2003).

2    Here, the focus of Defendant's motion to withdraw is the core/non-core distinction.

3    "Whether the claim is core or non-core," however, "is not dispositive of the motion to withdraw,

4    but is merely a factor to consider." <u>Id.</u>   As shown below, not only is Plaintiff's claim core in the

5    context of this dispute, the majority of factors weigh in favor of adjudicating this matter in the

6    Bankruptcy Court.

7    **B.  Plaintiff's Declaratory Relief Action Is A Core Proceeding and Warrants Adjudication by the Bankruptcy Court.**

8

9    In section 157, core proceedings are categorized within a nonexclusive list.  <u>See</u> 28

10   U.S.C. § 157(b)(2).   Bankruptcy courts may hear and determine all core proceedings, but are

11   otherwise limited to providing the district court with proposed findings of fact and conclusions

12   of law for de novo review in non-core proceedings.  28 U.S.C. §157(b)(1), (c)(1); <u>In re Orion</u>

13   <u>Pictures Corp.</u>, 4 F.3d 1095, 1100-1101 (2d Cir. 1993).  There is a lack of consensus among the

14   courts as to whether post-petition claims on a pre-petition insurance contract, such as at issue

15   here, are core or non-core proceedings.  <u>In re Daewoo Motor America, Inc.</u>, 302 B.R. 308, 312

16   (C.D. Cal. 2003).

17   The debtor, PCG, exists in name only, having no assets of substance to repay the

18   millions of dollars in creditor claims.  But for Reimers' defalcations, PCG would be solvent, and

19   its former clients would not be forced to pursue recovery as creditors in bankruptcy.  The largest

20   potentially available asset from which to pay PCG's creditor claims are insurance proceeds

21   under the Policy for coverage of Reimers' theft.

22   Accordingly, because the vast bulk of any insurance proceeds will likely work to satisfy

23   claims brought by its defrauded former clients in bankruptcy, even if indirectly, and given that

24   the very conduct for which the Policy was designed and purchased—employee theft of

25   corporate and client funds—is the direct cause of PCG's insolvency, it is appropriate that the

26   Bankruptcy Court resolve Plaintiff's declaratory relief action.  Resolving the parties' dispute as

27   to Defendant's obligations under the policy in such a context "has a much more direct impact on

—————

5

28   PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF REFERENCE

the core administrative functions of the bankruptcy court" than if payment under the Policy would merely "augment the assets of the estate." See In re United States Lines, Inc., 197 F.3d 631, 638 (2d 1999) (holding post-petition claims on a pre-petition indemnity insurance policy to be core in nature).

The mere fact that the source of these potential funds is a pre-petition insurance policy is insufficient to cast the dispute as "non-core" under federal law, to the extent that the issue of "core versus non-core" proceedings is even determinative here. As such, this matter should be adjudicated in the same forum in which the creditor claims are being heard.

### 1. Plaintiff's Action for Declaratory Relief Should Be Resolved in the Bankruptcy Court.

Plaintiff's declaratory relief action stands to have a critical impact on the bankruptcy proceedings. A determination as to whether Defendant is obligated to pay PCG for Reimers' defalcations pursuant to the terms of the Policy essentially determines whether PCG has assets of significance to satisfy the bankruptcy creditors' claims. Payment to PCG by Defendant under the Policy would more than simply "augment" the size of the bankruptcy estate; such payment would likely stand as the single largest asset of PCG's, dwarfing all others in dollar amount.

While the connection between these proceeds and recovery by the defrauded clients is indirect in that the proceeds would be paid to directly to PCG for its losses due to Reimers' criminal misconduct and would encompass the theft of funds beyond those involving the investments of its clients, such as corporate profit from the fees for its services, it cannot be disputed that such insurance proceeds would have a significant impact in satisfying the creditor's claims against PCG in bankruptcy. As such, a court's adjudication of Plaintiff's declaratory relief action would have tremendous impact on the direction of the bankruptcy proceedings and thus should remain with the Bankruptcy Court for determination.

### 2. Additional "For Cause" Factors Weigh in Favor of Denial of Withdrawal.

As discussed above, the result of the declaratory relief action will be the determinative

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF REFERENCE

11/21/07 (23678) #276173.4

1   factor as to whether there will be any PCG assets of significance from which to satisfy the

2   claims of the bankruptcy creditors. Concerns of the "uniformity of bankruptcy administration"

3   are therefore implicated here by the impact of any determination of Defendant's obligation under

4   the Policy, as the bulk of creditors stand to be affected ultimately by the outcome of such a

5   determination.

6        As demonstrated by its otherwise inexplicable delay in filing its motion to withdraw in

7   the district court, as clearly mandated by the applicable local rule, there is risk that Defendant is

8   simply employing section 157(d) as a means to increase the "delay and costs" to Plaintiff in

9   obtaining coverage under the Policy.  Adjudicating the matter in the Bankruptcy Court serves

10  judicial economy by resolving the dispute in the court which has handled the underlying case

11  since its inception in December 2005—avoiding the need to create a new branch in the litigation

12  in an entirely different court.

### 3.  Jury Demand by Defendant Insufficient Basis to Warrant Granting Motion To Withdraw.

For purposes of evaluating the merits of a motion to withdraw, the issue of a jury

demand by a party to the adversary proceeding is relevant only where the court has deemed the

proceeding to be non-core in nature; otherwise, in core proceedings, the bankruptcy court is

empowered to hold jury trials. <u>Orion Pictures Corp.</u>, 4 F.3d at 1101.  The concern is that the

Reexamination Clause of the Seventh Amendment to the United States Constitution would be

violated by a district court's de novo review of a verdict issued by a jury in bankruptcy court

regarding a non-core proceeding.  <u>Id.</u>

As a threshold matter, however, the declaratory relief action here is equitable in nature

and does not permit adjudication by a jury.  Declaratory relief actions do not generally entitle

parties to a jury trial where the right to a jury trial, based upon the nature of the underlying

dispute, does not otherwise exist.  <u>Golden v. Kelsey-Hayes Co.</u>, 73 F.3d 648, 661-662 (6th Cir.

1996).  Here, Plaintiff does not seek relief for breach of contract—there is <u>no</u> allegation by

Plaintiff in his complaint that Defendant has breached the terms of the Policy.  In fact,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF REFERENCE

11/21/07 (23678) #276173.4

1    Defendant has yet to take a position on the issue and is currently investigating Plaintiff's claim.

2    What Plaintiff seeks through his declaratory relief action is a court's interpretation of

3    Defendant's obligations under the Policy vis-à-vis the losses sustained by PCG due to Reimers'

4    defalcations.  This task requires interpretation by a court of the terms of the policy as opposed to

5    an award of money damages, thus placing the dispute firmly within the equitable realm.  <u>See</u>

6    <u>e.g.</u>, <u>Cal. Cas. Indem. Exch. v. Frerichs</u>, 74 Cal. App. 4th 1446, 1450 (3d Dist. 1999) (holding

7    that facial application of written policy absent disputed extrinsic evidence is within purview of

8    the court).

9        Additionally, even assuming <u>arguendo</u> that the proceeding has been deemed to be non-

10    core and that the issue is legal in nature, where a district court determines that "a case is unlikely

11    to reach trial, that it will require protracted discovery and court oversight before trial, or that the

12    jury demand is without merit," withdrawal of reference may be premature or inappropriate and

13    warrant denial of a motion for the same.  <u>Id.</u> at 1101-1102.  Here, the dispute is at the initial

14    pleading stage and no discovery has been undertaken by the parties; that the dispute is at this

15    earliest of stages in the proceedings renders the likelihood of proceeding to trial and the

16    complexity of discovery unknown.  As such, withdrawal on the basis that Defendant

17    "anticipates demanding a jury trial" at this point in the proceedings is premature and

18    unnecessary without having completed steps towards clarifying the certainty of trial and the

19    complexity of the proceedings leading up to it.

20   **IV.**     **CONCLUSION**

21        For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

22    motion to withdraw reference to the Bankruptcy Court.

23    Dated:  November 21, 2007       FITZGERALD ABBOTT & BEARDSLEY LLP

24

25                By    _____

                      William E. Adams

26                   Attorneys for Plaintiff John T. Kendall, Chapter

                  7 Trustee

27                      _____

                        8

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR WITHDRAWAL OF
REFERENCE

11/21/07 (23678) #276173.4