IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN T. KENDALL, Chapter 7 Trustee,<br><br>      Plaintiff,<br><br>  v.<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>      Defendant.<br>_____/ | No. C 07-3713 CW<br><br>ORDER TENTATIVELY GRANTING IN PART DEFENDANT'S MOTION TO WITHDRAW REFERENCE AND REQUESTING RECOMMENDATION FROM BANKRUPTCY JUDGE |

    Defendant Hartford Fire Insurance Co. moves to withdraw the reference to the U.S. Bankruptcy Court of Plaintiff John T. Kendall's claim against it. Plaintiff opposes Defendant's motion. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court tentatively grants Defendant's motion in part and denies it in part.

BACKGROUND[1]

    This action arises out of a fraudulent scheme executed by Francis Reimers. In or about 1996, Reimers founded Plan Compliance

---

[1] The facts described in this section are taken from the allegations in the complaint and the materials submitted in support of the present motion.

Group (PCG). PCG provided investment services on behalf of federal employees and employees of state and local educational institutions. These services included collecting and remitting money designated by employees for deposit in their personal retirement plans.

Reimers also held himself out as the representative of a business called Advisory Services Group (ASG), which purportedly provided financial services to individual investors. It is not known whether ASG actually existed as a separate entity. Pursuant to the fraudulent scheme, Reimers diverted funds obtained through PCG's operations to pay guaranteed monthly dividends to ASG investors and to cover his own personal expenses. In late 2005, an investigation led to the discovery that Reimers was embezzling PCG funds. Reimers subsequently plead guilty to federal criminal charges and was sentenced to nine years in prison. PCG became the subject of a voluntary Chapter 7 bankruptcy case. Plaintiff is the trustee in that action.

In his role as trustee, Plaintiff learned that PCG had purchased a bond from Defendant in 1999, pursuant to which Defendant agreed to pay PCG up to two million dollars for any loss resulting from theft by a PCG employee. Plaintiff sought reimbursement from Defendant for losses caused by Reimers' misappropriation of PCG funds. Defendant investigated PCG's claim, but never issued a determination on PCG's eligibility for reimbursement under the bond.

On May 18, 2007, Plaintiff filed an adversary complaint against Defendant in the bankruptcy proceedings. The complaint

2

asserts one claim only, seeking "declaratory relief" in the form of "a declaration that under the terms of the bond, Defendant has an obligation to Plaintiff to fully and completely reimburse PGC in the amount of $2 million in connection with Reimers' defalcations." Req. for Judicial Notice Ex. 1 at 5.[2]  On or about June 29, 2007, Defendant filed a motion for withdrawal of the reference of this claim to the bankruptcy court.  On or about July 19, 2007, the bankruptcy court transferred the motion to the district court for determination.  On October 24, 2007, Defendant made its motion in the district court for withdrawal of the reference.  The case was recently reassigned to the undersigned.

## DISCUSSION

Defendant argues that, because Plaintiff's claim against it is a non-core proceeding in which Defendant intends to demand a jury trial,[3] and because Defendant does not consent to a jury trial before the bankruptcy court, the Court should withdraw the reference of Plaintiff's claim to the bankruptcy court.

Title 28 U.S.C. § 157 classifies matters in bankruptcy cases as either "'core proceedings,' in which the bankruptcy court 'may enter appropriate orders and judgments,' or 'non-core proceedings,' which the court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for

---

[2] The Court grants Defendant's request that it take judicial notice of the complaint filed in the bankruptcy proceedings.

[3] Defendant has not yet answered the complaint or demanded a jury trial.  This order is premised on the assumption that Defendant will timely file a jury demand within ten days of its answer, as required by Rule 38(b) of the Federal Rules of Civil Procedure.

3

1 de novo review." <u>Security Farms v. Int'l Bhd. of Teamsters</u>, 124
2 F.3d 999, 1008 (9th Cir. 1997) (quoting 28 U.S.C. § 157).

3     Claims "arising under" or "arising in" Title 11 of the United
4 States Code are core proceedings. <u>In re Harris Pine Mills</u>, 44 F.3d
5 1431, 1435 (9th Cir. 1995). A claim arises <u>under</u> Title 11 if it
6 involves "a cause of action created or determined by a statutory
7 provision of Title 11," while a claim arises <u>in</u> Title 11 if it is
8 an administrative matter that arises only in bankruptcy cases. <u>Id.</u>
9 (quoting <u>In re Wood</u>, 825 F.2d 90, 96-97 (5th Cir. 1987)). "If the
10 proceeding does not invoke a substantive right created by the
11 federal bankruptcy law and is one that could exist outside of
12 bankruptcy it is not a core proceeding." <u>Id.</u> (quoting <u>In re Wood</u>,
13 825 F.2d at 97).

14     Section 157(c)(1) requires de novo review by the district
15 court of all non-core matters. As a result, "holding jury trials
16 in bankruptcy court on non-core matters would necessarily result in
17 reexamination of the jury's fact-finding, thereby violating the
18 Seventh Amendment's prohibition on such reexamination." <u>In re</u>
19 <u>Daewoo Motor Am., Inc.</u>, 302 B.R. 308, 314 (Bankr. C.D. Cal. 2003).
20 Thus, "bankruptcy courts cannot conduct jury trials on noncore
21 matters, where the parties have not consented." <u>In re</u>
22 <u>Cinematronics, Inc.</u>, 916 F.2d 1444, 1451 (9th Cir. 1990).

23     Plaintiff's claim for payment pursuant to the terms of the
24 bond is one for breach of contract under the common law. It does
25 not "arise under" or "arise in" Title 11 because Plaintiff's
26 substantive right to recovery was not created by the bankruptcy
27 laws. Therefore, the claim appears to be a non-core proceeding.

28     4

This is true even though, as Plaintiff notes, insurance proceeds under the bond may represent the largest potentially available asset from which to pay the claims of PCG's creditors.  While the potential effect of the breach of contract claim on a resolution of the matters before the bankruptcy court renders the claim "related to" the core proceedings, see In re Harris Pine Mills, 44 F.3d at 1435, it does not convert the claim into a core proceeding itself.[4]

Plaintiff argues that, even if his claim is found to be a non-core proceeding, Defendant has no right to a jury trial because the claim is one for declaratory judgment and seeks equitable relief. Nonetheless, the claim appears to be fundamentally one for breach of contract, despite the fact that it is styled as one for declaratory relief and does not contain the phrase "breach of contract."  A true declaratory judgment action anticipates a future lawsuit brought by the defendant against the plaintiff.  It provides the plaintiff with the opportunity to establish that his or her present conduct does not give rise to liability, thereby allowing the plaintiff to carry on with that conduct without the fear of being sued by the defendant in the future.  This is not the case here.  Plaintiff is not trying to ward off a future lawsuit by Defendant.  To the contrary, he claims that Defendant is presently in breach of its contractual obligation to reimburse PCG for its losses.  Nor is the requested relief equitable in nature, despite Plaintiff's characterization of it as such; a "declaration that

---

[4]The cases Plaintiff cites from the Second Circuit are not applicable here; the Ninth Circuit takes a narrower view than the Second Circuit of what constitutes a core proceeding.  See In re Daewoo Motor, 302 B.R. at 311-12.

under the terms of the bond, Defendant has an obligation to Plaintiff to fully and completely reimburse PGC in the amount of $2 million" is tantamount to a money judgment.

Accordingly, it appears that Defendant has the right to a jury trial. Because Defendant does not consent to a jury trial before the bankruptcy court on this non-core proceeding, the trial may not be conducted in the bankruptcy court. Therefore, the Court is inclined to withdraw the reference to the bankruptcy court for the purposes of the trial of this action.

However, a "valid right to a Seventh Amendment jury trial in the district court does not mean the bankruptcy court must instantly give up jurisdiction and that the action must be transferred to the district court. Instead, . . . the bankruptcy court may retain jurisdiction over the action for pre-trial matters." In re Healthcentral.com, 504 F.3d 775, 788 (9th Cir. 2007). Because Plaintiff's breach of contract claim is "related to" the bankruptcy proceedings in that insurance proceeds under the bond may represent PCG's largest available asset, the interest of judicial economy would likely favor a resolution of all pre-trial matters in the bankruptcy court, which is already familiar with the background of this case. Accordingly, the Court is inclined to withdraw the reference only after the bankruptcy court has adjudicated all pre-trial matters.

However, the Court requests the bankruptcy court's recommendation on this matter, and will refrain from issuing a final order on this motion until the bankruptcy court has had an opportunity to provide such a recommendation.

6

CONCLUSION

For the foregoing reasons, the Court tentatively GRANTS IN PART and DENIES IN PART Defendant's motion to withdraw the reference to the U.S. Bankruptcy Court. The Court is inclined to withdraw the reference, but only after the bankruptcy court has adjudicated all pre-trial matters. The Court will enter a final order after the bankruptcy court has had an opportunity to issue its recommendation.

IT IS SO ORDERED.

Dated: 3/19/08

CLAUDIA WILKEN
United States District Judge

7